E-FILED
Friday, 28 October, 2016  04:02:51 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

JOHN JUDSON GRUGETT,
    Plaintiff,

v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:15-CV-01428-JEH

### Order and Opinion[1]

The Plaintiff, John Judson Grugett, appeals the Defendant-Commissioner's denial of his application for Supplemental Security Income benefits, wherein he alleged he was disabled. He asks this Court to remand this matter back to the Commissioner for further administrative proceedings, arguing that the Administrative Law Judge ("ALJ") erred by failing to provide adequate reasons for rejecting the opinions of a treating physician and making an erroneous determination regarding Grugett's credibility.[2]

In his application for benefits filed on June 19, 2012, Grugett alleged onset of disability beginning on April 21, 2012. (Tr. 25).[3] The ALJ found that Grugett's degenerative joint disease of the left shoulder, hypertension, and obesity were "severe impairments." (Tr. 27). However, she also found that Grugett had the

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (D. 10-11).
[2] Although Grugett lists as an issue a challenge to a hypothetical question asked by the ALJ to a Vocational Expert, he nowhere in his motion for summary judgment develops, or even mentions, this argument. The Court will therefore not discuss it further, as it is waived.
[3] Citations to the record of proceedings below are  abbreviated as "Tr. __." Citations to the Docket in this case are abbreviated as "D. __."

residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [H]e cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can only occasionally balance, stoop, kneel, crouch, and crawl; he can occasionally reach in any direction with the non-dominant upper extremity; he can only occasionally push/pull with the non-dominant upper extremity; and he is limited to frequent but not constant handling (grasping) with the non-dominant upper extremity.

(Tr. 28-29). Although this RFC would not allow Grugett to perform any of his "past relevant work," there were jobs in the national economy that he could perform, thereby precluding a finding of disability. (Tr. 31-32).

Regarding Grugett's left shoulder issue -- the only impairment he really discusses on appeal -- the objective medical evidence reveals as follows. On April 21, 2011, Grugett saw for the first time nurse practitioner, Holly Killion. (Tr. 303). Her treatment note lists the reason for the encounter as, "WANTS TO GET SS DISABILITY—SHOULDER PAIN." *Id.* He complained of shoulder pain which started over three years before the visit, after he picked something up at work and "felt a pop." *Id.* He characterized his pain as sharp and stabbing which lasted all day, but was worse at night when trying to sleep. He had not had an x-ray or MRI, but did occasionally take Ibuprofen and his sisters' Vicodin. *Id.* Killion noted a full range of motion with all extremities, although with pain. *Id.* She started Grugett on naproxen and Vicodin, ordered an x-ray, and scheduled a follow-up visit six weeks later. *Id.* The x-ray revealed "mild left should osteoarthritis." (Tr. 314).

At that follow-up visit on June 10, 2011, Killion again noted a full range of motion of the shoulder, but with pain. (Tr. 303). She changed the naproxen prescription to piroxicam because the naproxen made Grugett sick and increased the Vicodin prescription from 60 to 90 pills a month, per his request. *Id.* Finally,

she ordered an MRI and scheduled a follow-up a month later to discuss the results. *Id.*

The July 14, 2011 MRI revealed a partial thickness articular and bursa surface tear of the supraspinatus tendon; severe AC joint degenerative change; advanced glenohumeral joint osteoarthritis with full thickness cartilage loss, tearing, and paralabral cysts; and a visualized lesion (later found to be non-cancerous) in the proximal humeral diaphusis. (Tr. 311).

Grugett next saw Killion on July 21, 2011, to discuss his MRI results. (Tr. 298). She noted no changes in the physical exam of Grugett's shoulder since her last exam, noted that the MRI revealed multiple injuries in his left shoulder, and noted his need to see an orthopedic surgeon for surgery. *Id.* She discontinued his piroxicam but kept him on the Vicodin. *Id.*

On October 27, 2011, Grugett saw physician's assistant Danielle Johnson for a three month check-up. (Tr. 293). Her treatment note indicated that Grugett was still in the process of finding an orthopedic surgeon for a consult. *Id.* She kept him on his Vicodin and scheduled him for another follow-up in three months. *Id.*

At that follow-up visit on January 27, 2012, Johnson noted Grugett had limited movement in his shoulder due to pain.[4] (Tr. 286). She also repeated the findings of the previous MRI and noted that Grugett requested that she complete paperwork for his disability claim. *Id.*

At Grugett's next office visit on October 3, 2012, he saw Dr. Holden for the first time. (Tr. 368). Dr. Holden noted the reason for the visit was "disability papers." *Id.* He noted Grugett's symptoms were "unchanged," and that he still complained of left shoulder pain, it being an 8 out of 10. (Tr. 369). He also noted

---

[4] The notes indicates the pain was in the "right shoulder," but this can only be a typo, given that nothing in the record prior to this visit indicated any issues with the right, rather than the left, shoulder, and the rest of the treatment note references Grugett's left shoulder. (Tr. 286).

tenderness in the shoulder with weakness and decreased range of motion. *Id.* Dr. Holden noted a prescription for hydrocodone, with no other plans for treatment. *Id.*

At this same visit, Dr. Holden also completed a "Residual Functional Capacity Questionnaire." (Tr. 328). He opined Grugett could sit 60 minutes at one time and for eight hours total, stand or walk for 30 minutes at one time and for four hours total, lift and carry ten pounds occasionally and less than ten pounds frequently, and shift positions at will between sitting, walking, and standing. (Tr. 328-29). Dr. Holden opined Grugett could use his left arm for handling and fingering for ten percent of the workday with no ability to reach with that arm. (Tr. 329). Dr. Holden also opined Grugett would likely be absent more than four times per month due to impairments and treatment. *Id.* Dr. Holden did not provide, nor does the form have a space for, any explanation regarding how or why Dr. Holden reached these conclusions.

Grugett saw Dr. Holden only one other time, on November 29, 2011. (Tr. 363). The visit was a follow-up and medication renewal visit, at which Dr. Holden noted Grugett was still waiting on his "disability," still had no change in his symptoms, and had 7 out of 10 pain. *Id.*

After this last visit with Dr. Holden, Grugett had a number of other visits with various doctors over the next year, all of which indicated symptoms consistent with the previous treatment notes. (Tr. 331, 334, 348, 354, 387-89, 391, 394-95, 398).

Regarding opinion evidence, consultative examining physician, James D. Ausfahl, examined Grugett on August 10, 2012. (Tr. 321). He found no upper extremity abnormality, no joint swelling, and no redness or tenderness. *Id.* He also found no functional limitations. Indeed, he only found some limitations in

Grugett's range of motion for the left shoulder. (Tr. 325). Everything else, according to Dr. Ausfahl, was normal. *Id.*

Reviewing physician, Dr. Henry Rohs, considered this opinion, along with Grugett's medical records, when he found Grugett not disabled on August 17, 2012. (Tr. 81). Dr. Rohs noted Grugett's decreased range of motion in his left shoulder, but found his allegations regarding the level and persistence of his symptoms exceeded the found medical evidence. (Tr. 83). Rather than total disability, Dr. Rohs concluded that Grugett could occasionally lift 20 pounds, frequently lift 10, stand or walk 6 hours out of an 8-hour work day, sit 6 hours out of an 8-hour workday, and limitations in his push and pull abilities in his upper extremities. He also noted a limitation of only occasional climbing of ladders, ropes or scaffolds and a limitation in ability to lift front, laterally, or overhead on the left side. (Tr. 86). The opinion of reviewing physician, Dr. Julio Pardo, made on February 15, 2013, was identical to Dr. Rohs's opinion. (Tr. 101).

The ALJ's RFC mirrored the opinions of Drs. Rohs and Pardo, but Grugett argues that she did not provide adequate reasons for rejecting Dr. Holden's opinion. The ALJ not only provided adequate reasons for rejecting the opinion of Dr. Holden, but she was entirely correct in doing so.

The Court's function on review of a denial of social security benefits is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by

substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

Though an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), citing *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). An ALJ must provide "good reasons" for discounting such opinions. *Cambell v Astrue,* 627 F3d 299, 306 (7th Cir 2010). Should an ALJ provide such "good reasons" for discounting a treating physician's opinion, she must then decide what weight to give that opinion. *Id.* at 308. If the ALJ does not give a treating physician's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 CFR § 404.1527; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In rejecting Dr. Holden's opinion, the ALJ noted the opinion was not well supported by clinical findings and was inconsistent with the consultative examination findings. (Tr. 30). Although the reasons listed were brief, those reasons were more than sufficient to justify the rejection of the opinion in light of the other record evidence in the case, most of which was discussed at length by the ALJ in her decision. As the ALJ noted, no clinical findings supported the degree of limitation noted by Dr. Holden. Moreover, Dr. Holden gave his opinion

on the same day as his very first visit with Grugett.  The two had no established relationship with one another and, even after this initial visit, Dr. Holden only saw Grugett on one other occasion. Accordingly, Dr. Holden's treating relationship with Grugett had no more history than the lone visit Grugett had with consultative examiner Ausfahl. In light of the treatment notes preceding the visit of Grugett with Dr. Holden and Dr. Holden's own treatment note on the same day he completed the RFC questionnaire, there was absolutely no basis in the record for his conclusion that Grugett was incapable of working on a full-time sustained basis and would miss more than four days of work a month because of his shoulder problems.

Rather, as the ALJ concluded, the other opinion evidence in the record was consistent with the objective medical records in the case and, accordingly, she was correct in crediting those opinions and not Dr. Holden's. Indeed, all those opinions were not only consistent with each other, but the objective medical evidence as well.  The only outlying piece of evidence in this case, other than Grugett's own subjective testimony, was Dr. Holden's opinion. Thus, the ALJ was correct to reject it. Although she could have provided a more thorough explanation, the explanation she did provide was enough. The regulations indicate that an ALJ should consider the regulatory factors, but they do not require an ALJ to expressly discuss every factor in the decision. Rather, the regulations provide that the ALJ will consider all of the factors and "give good reasons in our . . . decision for the weight we give your treating source's opinion." 20 C.F.R. § 416.927(c)(2). As the Seventh Circuit noted in *Henke v. Astrue*:

> [t]he ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, and its inconsistency with the rest of the record. This is enough.

498 F. App'x 636, 640 n.3 (7th Cir. 2012) (citations omitted).

Lastly, the ALJ's assessment of Grugett's credibility was not patently erroneous wrong. An ALJ must consider all of the individual's symptoms with the entire case record, including medical and nonmedical sources. SSR 16-3p. A claimant must provide credible testimony and objective evidence to qualify for disability insurance benefits for allegations of disabling pain. *Moothart v. Bowen,* 934 F.2d 114, 117 (7th Cir. 1991). If a claimant's statements "about the intensity, persistence, and limiting effects of symptoms are inconsistent" with the other evidence, the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . ." *Id.* "Although an ALJ's credibility determination is usually entitled to deference, 'when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision.'" *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), quoting *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). In other words, the ALJ's credibility determination may only be reversed if it is "patently wrong." *Ingram v. Colvin*, 2014 WL 3704816, *6 (C.D. Ill. July 25, 2014), citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Here, the ALJ carefully considered Grugett's testimony in light of the objective medical evidence and medical opinions, set forth, *supra*. As already noted when discussing the ALJ's rejection of Dr. Holden's opinion, the evidence in the case overwhelmingly demonstrated that Grugett was not disabled to the degree he claimed. Doubtlessly, he had limitations from the condition of his left shoulder which also clearly caused him pain. All of the medical records support that conclusion. But none of them, other than Dr. Holden's opinion which the ALJ properly rejected, support the degree of disability claimed by Grugett. Instead, the RFC formulated by the ALJ accurately reflected the degree of limitation supported

by the objective medical evidence and the medical opinions which were properly credited by the ALJ. No reliable evidence in this record suggests that Grugett cannot perform light work with the limitations included in his RFC as determined by the ALJ, and, consequently, her credibility assessment of Grugett's claims of pain and level of impairment were not patently wrong.

For all of the foregoing reasons, the Plaintiff's Motion for Summary Judgment (D. 13) is DENIED and the Defendant's Motion for Summary Affirmance (D. 17) is GRANTED. The decision of the Commissioner is therefore AFFIRMED. This matter is terminated.

*It is so ordered.*

Entered on October 28, 2016

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE